IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO



**FILED**
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**05 JAN -5 AM 11: 09**

CLERK-ALBUQUERQUE

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

vs.                                                     CIVIL NO. 04-636 BB/LFG
                                               CRIM. NO. 00-1589 BB

OSCAR SCULL,

      Defendant-Movant.

### MAGISTRATE JUDGE'S FINDINGS
### AND RECOMMENDED DISPOSITION[1]

#### Findings

1.  This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to

28 U.S.C. § 2255 [Doc. 1], filed June 4, 2004, and the Amended Motion [Doc. 4]. Movant Oscar

Scull ("Scull") attacks the judgment and sentence entered by the United States District Court for the

District of New Mexico in <u>United States v. Scull</u>, No. CR 00-1589 BB. The United States filed its

responses to the original motion and the amendment [Doc. 7, 14], and the parties filed further replies

and responses [Docs. 18, 19, 20]. In its responses, the United States seeks dismissal of the petition.

The motion to dismiss is fully briefed. For the reasons given below, the Court recommends that the

United States' motion to dismiss be granted.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.



Procedural Background

2.  On July 12, 2001, Scull was found guilty of several offenses, including conspiracy to possess crack cocaine with intent to distribute, conspiracy to distribute crack cocaine, distribution of crack cocaine, possession of crack cocaine with intent to distribute, maintaining a house for the manufacture of crack cocaine, and aiding and abetting, in violation of 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B); § 846; and §§ 856(a)(1), (b).

3.  On appeal, Scull conceded that the government presented direct evidence to support his conviction for distribution of crack cocaine, but he argued the government failed to present sufficient evidence to convict him of the other charges.  The Tenth Circuit rejected Scull's contentions and affirmed the conviction. United States v. Scull, 321 F.3d 1270 (10th Cir.), cert. denied, 540 U.S. 864 (2003).

4.  Scull now asserts as grounds for review under 28 U.S.C. § 2255:

(1)  ineffective assistance of counsel in that his attorney raised but then abandoned the issue of admissibility of out-of-court statements of Scull's co-defendants;

(2)  ineffective assistance in that his attorney failed to challenge the court's subject matter jurisdiction on all charges in the indictment;

(3)  the court was without subject matter jurisdiction;

(4)  the statutes under which Scull was indicted violate due process in that they are void for vagueness;

(5) ineffective assistance of counsel in that his attorney failed to challenge the constitutionality of 21 U.S.C. § 841(a)(1);

(6)  ineffective assistance of counsel in that his attorney failed to challenge the execution of a search warrant.

2

5.      The Court considers each of these grounds separately.  The factual background will be stated below as necessary for discussion of each issue.

Claim One:
Ineffective Assistance of Counsel in Connection with
Out-of-Court Statements by Co-Defendants

6.  Scull contends that his trial attorney was ineffective in failing to follow through on issues raised in a pretrial motion concerning the admissibility of certain out-of-court statements made by Scull's co-defendants in the course of the conspiracy.[2]

7.  On April 19, 2001, Scull's trial counsel filed a motion [Doc. 60 in CR 00-1589] asking for a pretrial hearing pursuant to United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917 (1979), concerning admissibility of any co-conspirator declarations that the prosecution planned to offer at trial under Fed. R. Evid. 801(d)(2)(E).  That rule defines as non-hearsay statements by a co-conspirator made during the course and in furtherance of the conspiracy.  Co-conspirator statements may properly be admitted against the defendant if the court makes a three-part

---

[2]In one of his Replies, Scull adds a new element to Claim One, arguing at great length that admission of the co-conspirator statements violated his right to confrontation, citing Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  The Court agrees with the government that Scull's attempt to include new issues in his reply brief is inappropriate, particularly in light of the Court's refusal to allow serial amendments to his Motion.  [Doc. 9, at 4: "Scull cannot simply add new claims as they occur to him"].  Even assuming that Scull raises this issue as simply another point in support of his ineffective assistance claim, the Court rejects it.  In Crawford, the Supreme Court very explicitly and pointedly distinguished "testimonial" statements by a person under interrogation by authorities – that is, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" – from "statements that by their nature were not testimonial – for example, business records or statements in furtherance of a conspiracy" which are subject to standard exceptions to the hearsay rule.  Crawford, supra, 124 S. Ct. at 1364, 1367.  The strict rule of Crawford clearly does not apply to non-testimonial statements such as the co-conspirator declarations at issue in this case.  There is thus no need to consider Scull's further belated argument that the Crawford decision should apply retroactively on collateral review.

finding: (1) that a conspiracy existed; (2) that both the declarant and the defendant were members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy. United States v. Eads, 191 F.3d 1206, 1210 (10th Cir. 1999), *cert. denied*, 530 U.S. 1231 (2000).

8. The purpose of a hearing under United States v. James, *supra*, is to avoid prejudice to the defendant arising from improper introduction of hearsay statements at trial. At the James hearing, the prosecution is required to identify in advance any out-of-court co-conspirator statements which the prosecution intends to present at trial and to allow the court an advance opportunity to rule on admissibility. A James hearing is not mandated; rather the decision whether or not to hold a hearing and decide the issue prior to trial is discretionary with the trial judge. United States v. Williamson, 53 F.3d 1500, 1517-18 (10th Cir.), *cert. denied*, 516 U.S. 882 (1995).

9. In response to Scull's motion for a hearing, the government filed a Written Proffer for James Hearing [Doc. 64 in CR 00-1589], arguing that the government would produce substantial evidence of the existence of the conspiracy and Scull's involvement in it even without consideration of co-conspirators' statements, but that such statements should nevertheless be admitted. The proffer presented a detailed outline of the evidence that would be offered at trial.

10. In the proffer, the government argued that the three co-defendants, Scull, Gus Bono ("Bono"), and Josue Achon ("Achon") were involved in a conspiracy to sell crack cocaine. The proffer included reference to the following co-conspirator statements specifically related to Scull's participation in the conspiracy:

> (1) A statement made by Bono to narcotics agent Bryan Shields, who was at the time posing as drug dealer who wanted to purchase crack from Bono, to the effect that Agent Shields

4

would either be dealing directly either with Bono or occasionally with his partner, a person by the name of "Oscar" who would deliver for Bono. [Doc. 64 in CR 00-1589, at 4].

(2) A conversation between Bono and Agent Shields inside Bono's vehicle at a Walgreen's parking lot, in which Bono introduced Agent Shields to Scull and told Shields this was the same person he'd mentioned earlier when he told Agent Shields to deal only with him or his partner Oscar. On this occasion, Bono drove the vehicle around the parking lot while Scull sold crack cocaine to Agent Shields. [Id., at 7].

11. The court conducted the requested James hearing on June 25, 2001. [See, Transcript of James Hearing (hereafter cited as "JH")]. Scull argues that his attorney presented evidence and made arguments at the James hearing showing that the statements at issue were unreliable and inadmissible, but that the trial judge elected to defer ruling on the evidence's admissibility until trial. Counsel was thereafter ineffective, he contends, in failing to object when the evidence was introduced at trial, in failing to request an appropriate jury instruction regarding the weight to be given such statements, and in failing to raise the issue on direct appeal.

12. To establish ineffective assistance of counsel, the petitioner must make a two-pronged showing: first, that counsel's performance was constitutionally defective; and second, that the deficient performance prejudiced the defense in that counsel's errors were so serious so as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To prove deficient performance, Scull must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.), cert. denied, 525 U.S. 933 (1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995), cert. denied, 516 U.S. 1062 (1996).

13. It is unclear exactly which statements Scull claims were the subject of counsel's challenge at the James hearing and which his counsel allegedly abandoned at trial and on appeal. At the James hearing, Scull's attorney made arguments challenging several items of prospective evidence, not all of which consisted of statements by co-conspirators. Counsel referred to four pieces of evidence included in the government's proffer which, as counsel put it, allegedly "get him [*i.e.*, Scull] into the conspiracy" [JH at 11].

14. These pieces of evidence included: (1) Agent Shields' eyewitness testimony that Scull sold him cocaine in the presence of Bono; (2) Agent Shields' testimony that he was conducting surveillance at Bono's auto body shop and observed Scull drive up to the shop in a white Cadillac, get out of the car, go into the shop, and leave a few minutes later; (3) Agent Shields' description of an incident late in the investigation during which Bono seemed to suspect that Shields was an undercover agent and prevented him from leaving the body shop and when Scull suddenly approached Shields in such a way that Shields and other surveillance agents believed Shields was being threatened; and (4) drugs and evidence of drug manufacture seized from a bedroom in Scull's home. [JH, at 11-14].

15. Most of the argument at the James hearing involved pieces of evidence that were not, strictly speaking, co-conspirator statements. If Scull is arguing that his attorney abandoned the arguments she raised at the James hearing, the record simply does not support the contentions, as discussed below under subheading A. If Scull is arguing that his attorney failed to raise challenges at trial to the two co-conspirator statements mentioned above, again the record does not support a finding of ineffective assistance of counsel in this regard, as discussed below under subheading B.

6

A.

*There Were No Issues Raised at the James Hearing That Were Later Abandoned*

16. The first piece of evidence mentioned in the James hearing is the eyewitness testimony of Agent Shields describing an incident in Bono's car, with Bono present, in which Shields purchased crack cocaine from Scull. Scull's attorney stated she had no objection to Shields' testimony as to what occurred in the car. [JH, at 11]. There was no hearsay objection to be made, and the record does not support Scull's claim that his attorney raised and then abandoned, objections to this evidence.

17. The second piece of evidence to which counsel objected at the James hearing was Shields' description of Scull's arrival at and departure from Bono's shop in a white Cadillac. Counsel argued that the videotape evidence of surveillance done at Bono's body shop shows two men, neither of whom are Scull. The trial judge determined that this question would better be dealt with at trial. [JH at 19] At trial Shields conceded, on cross examination by Scull's counsel, that Scull had been misidentified on the particular videotape and that a white Cadillac had nothing to do with the case. [Trial Transcript, at 308-310 (hereafter referred to in the format, "TR at 308-310")]. Thus, the record does not support Scull's contention that his attorney raised and then abandoned objections to this evidence.

18. The third piece of evidence discussed at the James hearing was Shields' statement that Scull approached him in a threatening way while he was being detained by, or at least talking to, Bono. Again, admissibility of this evidence was left to be determined at trial. [JH at 12-13, 19]. Scull's counsel properly raised the issue again on the first day of trial, prior to jury selection. The judge again declined to rule in advance but stated the matter would be dealt with as it arose at trial.

7

[TR at 8-9]. In the end, the evidence did not come in as the trial judge sustained objections raised by both Scull's attorney and Bono's attorneys. [TR at 209-211, 222-223]. Again, the record does not show abandonment of objections with regard to this evidence.

19. Finally, Scull's attorney objected at the James hearing to admission of evidence that drugs were found in a bedroom in Scull's home at a time when co-defendant Achon was living in the room. Counsel argued that this evidence was too tenuous to link Scull to the drug conspiracy and therefore, should not be admitted. [JH at 13-14]. The Court deferred ruling on these items of evidence until the appropriate time at trial. At trial, evidence was presented that Achon was involved in the conspiracy and that drugs and evidence of drug manufacture were found at Scull's home. Agent Shields testified that Bono introduced "Daniel" (i.e., Achon) to Shields and told him that "Daniel" was also his partner in the drug business. Shields further testified that this conversation took place in Scull's vehicle, although Scull was not present at the time. Shields also testified that at this meeting, Achon sold crack cocaine to Shields, in Scull's vehicle. [TR at 163-166].

20. Shields and other law enforcement agents also testified as to certain items seized in a "trash pull" at Scull's home, including wrapping material, plastic bags, and a baking soda box which were items consistent with cocaine manufacture and which contained cocaine residue. [TR at 174-180, 340, 377-79, 428]. On cross-examination of Shields, Scull's attorney brought out the fact that the trash can outside Scull's home was accessible to persons other than Scull, that the can was not under surveillance all day, and that the items found inside the can could have had a legitimate purpose. [TR 313-316]. During direct and redirect examination of Shields, Scull's counsel objected several times to portions of Agents Shields' testimony dealing with what he found in the "trash pull" at Scull's home. Three of these objections were overruled; one was sustained. [TR at 230; 344-346].

8

Scull's attorney also cross-examined other law enforcement officers with regard to their testimony about the trash pull [TR 398-401; 462], and Scull's counsel argued in closing that the evidence found in the trash can was not indicative of drug manufacture at Scull's house. [TR 656-658]. It is clear that Scull's attorney zealously challenged Shields' testimony and she vigorously sought to inject doubt into the jurors' minds.

21. Several witnesses testified about the execution of a search warrant at Scull's home and the fact that crack cocaine, along with evidence of its manufacture at Scull's home, was found there. There was also evidence that co-defendant Achon was living in the bedroom where some of the drug evidence was found. [TR at 204, 230-31; 476-506; 524-527, 535-539; 559-564]. Scull's attorney carefully cross-examined these witnesses in an attempt to, among other things, raise doubts that Scull had anything to do with the particular bedroom where most of the drugs were seized. [TR 506-519; 546-547; 564-567]. Scull's attorney argued in closing that there was evidence that the room was rented by Achon and that the government had not shown that Scull had access to that room, and that the government had produced no objective evidence that crack cocaine manufacture was taking place at Scull's house. [TR 659-664]

22. The record does not support Scull's contention that his attorney raised issues at the James hearing which were later abandoned. To the contrary, the record shows that counsel was a vigorous and zealous advocate and that she did her best to exclude physical and testimonial evidence about the trash pull at Scull's home and the later search warrant execution there. She sought to discredit the testimony of law enforcement officers who described the events and the evidence, and to argue to the jury in closing that the evidence did not establish Scull's guilt. The fact that the jury chose to accept the prosecutor's version of the facts does not mean that defense counsel was ineffective. In sum, the

9

record does not support the contention that Scull's counsel was ineffective with respect to this evidence.

### B.
### *No Ineffective Assistance in Counsel's Handling of Co-Conspirator Statements*

23. As noted above, Scull's argument in Claim One is unclear. However, the Court rejects this claim that his attorney was ineffective with respect to her treatment of co-conspirator statements and further rejects the claim that the result of the trial would have been different if she had competently handled this issue.

24. Co-conspirator statements are defined as non-hearsay. Fed. R. Evid. 801(d)(2)(E). As noted above, such statements are properly admitted if the court determines: (1) that a conspiracy existed; (2) that both the declarant and the defendant were members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy. United States v. Eads, *supra*, at 1210. All of these conditions were met. Even if the Court were to assume *arguendo* that his attorney mishandled these pieces of evidence, they were properly admissible. Therefore, the result of the trial would not have changed even if Scull's attorney had argued more strenuously or thoroughly for their exclusion. It follows as well that there was no ineffective assistance in failing to raise the issue on appeal.

25. Scull's attorney asked for a James hearing, as noted above, to discuss admissibility of co-conspirator statements. At the hearing, she properly asked for pretrial rulings excluding various pieces of evidence, all of which connected Scull to the alleged conspiracy but most of which were not co-conspirator statements (*see* discussion in subhead A, above). The Court declined to issue rulings in advance of trial. A Court's rejection of a party's position does not in itself constitute evidence of

ineffectiveness.   Scull contends that his counsel's performance was constitutionally defective, however, in that she failed to object at trial when the co-conspirator statements were brought out in testimony, and failed to request a limiting instruction as to the weight to be given them.

26.   Evidence of statements made by co-conspirators are not disfavored in criminal trials.

> The doctrine that declarations of one conspirator may be used against another conspirator, if the declaration was made during the course of and in furtherance of the conspiracy charged, is a well-recognized exception to the hearsay rule which would otherwise bar the introduction of such out-of-court declarations.

Anderson v. United States, 417 U.S. 211, 218, 94 S. Ct. 2253, 2259 (1974).   Such statements are considered non-hearsay, and the rationale for the hearsay-conspiracy exception "is the notion that conspirators are partners in crime . . . . As such, the law deems them agents of one another.  And just as the declarations of an agent bind the principal only when the agent acts within the scope of his authority, so the declaration of a conspirator must be made in furtherance of the conspiracy charged in order to be admissible against his partner."   Anderson v. United States, supra, 417 U.S. at 219. Indeed, such statements have been held to be highly probative and reliable forms of evidence:

> [S]ome out-of-court statements are just as reliable as cross-examined in-court testimony due to the circumstances under which they were made.    We have recognized, for example, that co-conspirator statements simply "cannot be replicated, even if the declarant testifies to the same matters in court." United States v. Inadi, 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Because the statements are made while the declarant and the accused are partners in an illegal enterprise, the statements are unlikely to be false and their admission "actually furthers the 'Confrontation Clause's very mission' which is to 'advance the accuracy of the truth-determining process in criminal trials.'" Id., at 396, 106 S.Ct. 1121 (quoting Tennessee v. Street, 471 U.S. 409, 415, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985) (some internal quotation marks omitted)).

11

Crawford v. Washington, *supra*, 124 S. Ct. at 1377.(Rehnquist, J., concurring in part and dissenting in part).

27. There were two "co-conspirator statements," identified in the government's proffer in response to Scull's call for a James hearing, that deal with Scull's participation in the conspiracy. One was Bono's statement to undercover agent Shields to the effect that a man named Oscar was Bono's partner in the drug trade, and that in their future transactions, Shields could deal with Bono or Oscar.[3] The second statement occurred during a conversation between Bono and Agent Shields, with Scull present, in which Bono introduced Agent Shields to Scull and told Shields this was the person named Oscar whom he'd mentioned earlier. On this occasion, Scull sold crack cocaine to Agent Shields.

28. These hearsay statements, which link Scull to the drug-selling conspiracy, were clearly admissible. There was substantial independent evidence that a conspiracy existed for the purpose of manufacturing and distributing crack cocaine, and that Scull was engaged in this conspiracy with Bono and Achon. This evidence included physical evidence of drug manufacture pulled from Scull's trash; drugs and other evidence, including Bono's phone number written on a piece of paper seized at Scull's home under a search warrant; testimony as to surveillance of his home that showed Bono and Achon coming and going; testimony that Scull appeared at Bono's auto body shop, at a time

---

[3] The conversation in which Bono told Shields that Scull was his partner in the drug business, and that Shields could deal with either Bono or Scull but no one else, was taped but the recorder malfunctioned so the prosecution could not produce a confirming tape recording of the conversation at trial. [TR 104-106; 456-457]. However, the conversation was being monitored by agents staked out on surveillance, and DEA Agent Michael Mans, who helped direct surveillance of Agent Shield's undercover activities with respect to Bono and Scull, confirmed in his trial testimony that he heard Bono's statement that Scull was a member of the conspiracy. [TR 403-408]. Scull's attorney cross-examined Mans about the lack of a tape recording of the conversation [TR 456-457], and she mentioned in her closing remarks the "infamous untaped conversation that we know nothing about." [TR 653].

12

when Bono made clear to Shields that he suspected him of being an undercover agent, and commenced searching nearby automobiles presumably for evidence of eavesdropping law enforcement officers; Achon's use of Scull's vehicle to conduct drug transactions; and, most compelling of all, the fact that, while Bono was present, Scull sold drugs to Agent Shields, who gave eyewitness testimony at trial as to this drug transaction.

29. Thus, the conditions for admission of the co-conspirator statements were met in this case, those being a showing that the government has presented sufficient evidence, independent of the hearsay itself, to support a jury finding that the conspiracy existed, that the declarant and the defendant against whom the statement is offered were members of that conspiracy, and that the statements were made during the course of and in furtherance of the conspiracy. <u>United States v. Gomez</u>, 810 F.2d 947 (10th Cir.), <i>cert. denied</i>, 482 U.S. 908 (1987).

30. At the James hearing, Scull's counsel focused on other evidence she sought to have excluded rather than on co-conspirator statements. As noted above, the trial judge decided to wait until trial to determine the admissibility of the statements. This was not necessarily detrimental to Scull. Relying on the clarity of 20-20 hindsight, one could say that at trial, counsel could have been more assertive in objecting to Shields' testimony describing Bono's statements. She could have demanded that the court make explicit findings at the close of all the evidence regarding the sufficiency of the foundation for admitting the co-conspirator statements. <i>See</i>, <u>United States v. Gomez</u>, <i>supra</i>, at 951. However, the Court cannot say that Scull's attorney's performance was inadequate or that her tactical and strategic decisions to concentrate on other evidence at the James hearing was improper. So, too, the Court cannot state that the outcome of the trial would have been different if counsel had done these things, as required for a finding of ineffective assistance.

13

Strickland v. Washington, *supra*, 466 U.S. at 687 (petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable").

31. At the close of the evidence, Scull's attorney moved for acquittal on all counts. She argued vigorously, and at length, that the government failed to meet its burden of showing a conspiracy in which Scull was involved. She noted that Scull had been mis-identified on the videotape. She downplayed his involvement with Bono, and argued that the drugs found in a bedroom at Scull's house belonged to his roommate or tenant, Achon, and he had nothing to do with them. [TR 615-618]. Indeed, a review of the record as a whole confirms that Scull's attorney strongly and strenuously advocated Scull's position. The government argued just as vigorously that the evidence, outlined above, brought Scull into the center of the conspiracy. [TR 618].

32. After hearing the presentations of the parties, the trial judge denied Scull's motion for acquittal, noting, "Frankly, this is the strongest case [for the government] that I can recall since I've been on the federal bench." [TR 619]. It is obvious that a request by Scull's counsel for specific findings on the foundational matters underlying admission of the co-conspirator statements, had it been made, would have been denied. Given the strength of the government's evidence, the Court cannot say that anything counsel might have done would have changed the result of the trial.

33. Aside from his argument that counsel was ineffective in her handling of the co-conspirator statements, Scull also appears to argue that admission of the statements violated his Sixth Amendment right to confrontation. Scull did not raise this issue on appeal, nor has he shown the requisite cause and prejudice, and the Court therefore will not consider it on habeas review. United States v. Cox, 83 F.3d 336, 341 (10th Cir. 1996).

14

<u>Claims Two and Three:</u>
<u>Lack of Subject Matter Jurisdiction and Ineffective Assistance of Counsel</u>
<u>In Failing to Challenge the Court's Subject Matter Jurisdiction</u>

34. In these Claims, Scull argues that the Court lacked subject matter jurisdiction over his criminal trial and that his counsel was ineffective in failing to challenge jurisdiction. He claims that he was not correctly charged in the indictment because two of the statutes under which he was charged included language stating the drug-related activity was unlawful "[e]xcept as authorized by this subchapter." 21 U.S.C. §§ 841 and 856. The statutory exceptions referred to are authorizations for persons who have registered with the Attorney General to manufacture and distribute controlled substances. *See*, 21 U.S.C. §§ 822-827.

35. Scull does not claim that he was authorized by the Attorney General to manufacture and distribute drugs. Rather, he contends that the indictment should have included language alleging he fell outside the authorized exception for registered persons, and that because it did not include this language, the indictment alleged only a state crime and the federal court was therefore without jurisdiction to proceed under the indictment. He further asserts that his attorney was ineffective for failing to raise this argument.

36. The Court rejects Scull's claim that the district court lacked subject matter jurisdiction to try him due to allegedly deficient language in the indictment. The district courts of the United States have original jurisdiction over all offenses against the laws of the United States. U.S. Const. Art. III; 18 U.S.C. § 3231. The offenses charged against Scull in the indictment are all federal offenses and arise under the laws of the United States. Thus, this Court has jurisdiction unless the failure to recite the exclusionary language in the indictment somehow destroys jurisdiction. That

15

Court finds that the language of the indictment was constitutionally sufficient and, even if it had been

deficient, such deficiency would not serve to defeat jurisdiction.

37.  An indictment is not necessarily defective for failing to include language which

specifically "negatives" an exception to the offense.

> By repeated decisions it has come to be a settled rule in this
> jurisdiction that an indictment or other pleading founded on a general
> provision defining the elements of an offense . . . need not negative the
> matter of an exception made by a proviso or other distinct clause,
> whether in the same section or elsewhere, and that it is incumbent on
> one who relies on such an exception to set it up and establish it.

McKelvey v. United States, 260 U.S. 353, 356-57, 43 S. Ct. 132 (1922). McKelvey was interpreted

early on by the Tenth Circuit to mean that:

> if it is impossible to frame the statutory charge without negativing the
> exception, then it should be negatived; but where, as here, the statute
> states a clear, definite, and general offense, and then excepts certain
> classes or acts from its scope, the exception need not be negatived.
> Nor is it a matter of importance whether the excepting clause is in
> parenthesis, or set off by commas, at the beginning of the sentence, or
> follows a proviso at the end.

Nicoli v. Briggs, 83 F.2d 375, 379 (10th Cir. 1936).  See also, 7 Fifths Old Grand-Dad Whiskey v.

United States, 158 F.2d 34, 36 (10th Cir. 1946), cert. denied, 330 U.S. 828 (1947):

> [W]hen a criminal statute sets forth an exception, which exception is
> not a part of the crime, but operates to prevent an act otherwise
> included in the statute from being a crime, the burden is on the
> defendant to bring himself within the exception.

38.  Where the essential elements of the offenses charged can be set forth without reference

to the exceptions, and these essential elements are charged in the indictment, the indictment is

sufficient to inform the defendant of the offenses charged and it is up to the defendant to allege and

prove facts bringing him within the exception. Tritt v. United States, 421 F.2d 928, (10th Cir. 1970).

16

If, however, the exception "is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted," then the indictment must allege "enough to show that the accused is not within the exception." United States v. Cook, 84 U.S. (17 Wall.) 168 (1872); *see also*, United States v. Harpel, 493 F.2d 346, 351 (10th Cir. 1974). Other factors the Court should consider in determining whether a provision of a statute constitutes an element or an affirmative defense include the breadth or narrowness of the provision, the legislative history, and whether the defendant or the government is better situated to adduce evidence tending to prove or disprove applicability of the exception. United States v. Prentiss, 256 F.3d 971, 908 n.8 (10th Cir. 2001).      39. In the present case, the indictment charging Scull with federal offenses clearly and sufficiently advised him of the essential elements of the charges against him under §§ 841 and 856. The exception for registered manufacturers and distributors did not have to be referenced in the indictment, because it "operates to prevent an act otherwise included in the statute from being a crime." 7 Fifths Old Grand-Dad Whiskey, *supra*, at 36. Furthermore, the statutory exception is relatively narrow; the class of persons registered with the government as authorized manufacturers and handlers of controlled substances is a small subset of the total group of persons who handle these substances, legally or illegally. In addition, the defendant would be as capable of providing proof of his registered status, if indeed he had been registered, as the government would be.

40. The Court agrees with the decision in Gray v. United States, 430 F. Supp. 399 (E.D. Mo. 1977), holding that the failure to allege the statutory exceptions to 21 U.S.C. § 841(a)(1) did not render the indictment fatally defective:

> The language of section 841(a)(1) clearly does not incorporate the statutory exceptions to criminal liability into the elements of the offense defined by that section. This is made explicit by the language of 21 U.S.C. § 885(a)(1) which provides "It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any . . . indictment . . . under this subchapter, and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit."

41. An example of a case wherein statutory exceptions must be alleged in the indictment and proved beyond a reasonable doubt is United States v. Prentiss, *supra,* which involved a statute defining crimes in Indian country but making exceptions for offenses committed by one Indian against another. In that case, the Tenth Circuit held that the racial status of the victim and the defendant were "constituent parts of the crime" that must be charged in the indictment rather than affirmative defenses that must be asserted by the defendant, because Supreme Court precedent holds that federal jurisdiction under that statute is limited to interracial crime. Without the interracial element, the offense could not be prosecuted in federal court. The Prentiss decision was based in part on policy considerations of state and tribal sovereignty, which do not figure in the present case.

42. The Tenth Circuit also held in Prentiss that the failure to include even essential elements in an indictment does not deprive the district court of subject matter jurisdiction; rather, such omission is subject to a harmless error analysis. Id., at 981 (overruling prior precedent to the contrary).

> That a court may not adjudicate a criminal prosecution without subject matter jurisdiction is beyond doubt. Courts' recurring reference to the elements of a crime as "jurisdictional" to justify dismissal of an indictment which fails to allege an element, however, is misplaced . . . . [T]he Government's failure to allege the Indian/non-Indian statuses of the Defendant and his victim in the indictment did not deprive the district court of subject matter

18

> jurisdiction to hear the case, although Defendant ultimately may be
> entitled to dismissal of the indictment. To hold otherwise would turn
> questions of criminal statutory construction and the sufficiency of
> indictments into unwarranted jurisdictional inquiries.

Prentiss, *supra*, at 982. In the present case, as in Prentiss, Scull "obviously had no questions

concerning the federal charges against him, and neither do we. Accordingly, we are satisfied the

district court had subject matter jurisdiction over the indictment in this case." Id.

43. Scull does not contend that he comes within the statutory exception, and there is no

indication whatsoever that he has ever registered, or is qualified to register, as a legitimate handler

of controlled substances. The Court is confident that Scull was sufficiently notified of the charges

against him. The Court further concludes that it had subject matter jurisdiction over this case, and

that Scull's attorney did not render ineffective assistance by failing to challenge jurisdiction on this

ground.

### Claim Four:
### The Statutes Violate Due Process

44. Scull, referring to his arguments regarding the government's failure to allege and prove

that he did not fall within the exceptions of §§ 841 and 856 (*see* discussion under Claims Two and

Three, above), argues that 21 U.S.C. § 885 renders these provisions unconstitutional. As noted

above, 21 U.S.C. § 885 provides that it shall not be necessary for the United States to negative any

exemption or exception in the drug statutes, and that the burden of going forward with evidence

regarding such exceptions shall be upon the defendant. Scull claims that this statute means that he

has the burden of proving subject matter jurisdiction of the Court, and it therefore violates his due

process rights.

45. The statute has no such effect. Even if the failure to allege and prove the statutory exceptions rendered the indictment insufficient, which the Court found above it did not, this would not deprive the Court of jurisdiction. Prentiss, supra, at 981-82. Therefore, placing the burden on defendant to demonstrate that he falls within the statutory exceptions does not mean he is being forced to prove subject matter jurisdiction. The Court rejects Scull's argument in this Claim.

Claim Five:
Ineffective Assistance of Counsel in Failing to Challenge
Constitutionality of Statute

46. Scull alleges that "counsel was unreasonable and ineffective in failing to challenge the constitutionality of 21 U.S.C. § 841(a)(1) in light of Apprendi," referring to   Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000).   He appears to claim that § 841(a)(1) is unconstitutional because it does not define the type and quantity of the drug involved as an element of the offense, but rather leaves this to subsection (b) of that statute. He asserts that in his case, the drug type and amount "have never been fully charged in the indictment, nor proven at trial," but rather were left to proven by a preponderance of evidence at sentencing.

47. It does not constitute ineffective assistance to fail to make a futile argument.   United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995); United States v. Kramer. 168 F.3d 1196, 1202 (10th Cir. 1999) (it is not ineffective assistance to fail to pursue meritless theories).  Counsel would not have been successful in challenging the statute on the basis cited by Scull, and the Court therefore rejects his claim of ineffective assistance on this issue.

48. The Tenth Circuit has held that the Apprendi decision did not render 21 U.S.C. § 841 facially unconstitutional:

20

> Congress structured § 841 in two parts, with § 841(a) defining the prohibited behavior, and § 841(b) setting forth a range of penalties based on the quantities of drugs involved in the offense. Federal courts have historically construed the provisions of § 841(a) as the substantive elements of the offense, and the provisions of § 841(b) as sentencing factors which could be submitted to a district court for a finding to a preponderance of the evidence . . . . Whatever force those cases may have had in the past, we are now bound by the Supreme Court's interpretation of the Due Process Clause in Apprendi itself. Apprendi compels us to submit to a jury questions of fact that may increase a defendant's exposure to penalties, regardless of whether that fact is labeled an element or a sentencing factor . . . . [W]e find no inconsistency between Apprendi and § 841 that would compel a conclusion that the statute as written is unconstitutional.

United States v. Cernobyl, 255 F.3d 1215, 1218-19 (10th Cir. 2001).

49. To the extent that Scull is arguing that drug quantities were not charged in the indictment nor proved at trial, he is incorrect. In Count 1 of the indictment, Scull is charged with conspiring to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. In Count 3 of the indictment, Scull was charged with unlawfully, knowingly and intentionally distributing 5 grams and more of a mixture and substance containing a detectable amount of cocaine base, in violation of §§ 841(a)(1) and (b)(1)(B). In Count 7, he was charged with possession with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of cocaine base, in violation of §§ 841(a)(1) and (b)(1)(A).

50. Each of these charges includes a specific type of drug and a specific quantity of drug. Evidence was introduced at trial to establish that Scull possessed and distributed the controlled substances in the amounts charged. [TR 126-127, 491-92, 525, 559-562, 572-574, 580-605]. The question was submitted to the jury, and the jury made specific findings as to the drug quantities,

beyond a reasonable doubt.   [TR at 681-82; Verdict, attachment to Doc. 84 in CR 00-1589].   The

Court finds Scull's arguments on Claim Five to be meritless.

Claim Six:
Ineffective Assistance of Counsel in Failing to Challenge
Execution of Search Warrant

51.   Scull argues that his counsel was ineffective in that she "failed to challenge the Execution

of Search Warrant" at his home on November 30, 2000.   The arguments raised in Scull's initial filing

on this issue [Doc. 4] were unclear, as the government pointed out in its Amended Response.   To the

extent Scull argues that the search was defective because the warrant was issued after the search

began, the record does not support such an argument.   The Report of Investigation filed by Special

Agent Winnell states that the search warrant was executed at "approximately 5:00 pm" on November

30, 2000 [*see*, Attachment 1 to Doc. 4].   "Approximately 5:00 p.m." is too indefinite a statement to

prove that the warrant was executed before Judge Deaton signed it, and Scull produced no other

evidence on this point.   Trial testimony was to the effect that the warrant had been authorized prior

to execution of the search.   [TR 476-478].

52.   In his reply [Doc. 18] to the government's response, Scull raises the argument, for the

first time, that the search warrant was illegal, because United States Magistrate Judges do not have

authority to issue search warrants.   This specious contention is based on Scull's contention that the

jurisdiction of federal Magistrate Judges extends only to federal lands within the judicial district, and

the search in this case took place at Scull's house, which is not on federal land and therefore within

the sole jurisdiction of the state.   This is a frivolous argument, and Scull's attorney did not render

ineffective assistance in failing to raise it.   It is beyond dispute that a United States Magistrate Judge

has authority to issue a search warrant for any property within the judicial district in which he or she

22

sits.  28 U.S.C. § 636(a)(1); Fed. R. Crim. P. 41(b)(1) ("a magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property located within the district").

### Recommended Disposition

That the Motion to Vacate be denied and the case be dismissed with prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge

23